Mr. Weinshaw. Thank you, Your Honor. May it please the Court, Matthew Weinshaw of Contreras-Dorset on behalf of the plaintiff's defense and with me at counsel's table are Peter Kreaton and Helen Tellis. The District Court views this discretion in denying class certification for plaintiffs' Fair Credit Reporting Act claims and statutory damages because it applied standard plaintiff's claims. Under the plain language of the statute as amended in 1996 and this Court's decision intervened, a plaintiff seeking statutory damages may not also pull actual damages. We know this because Congress used a disjunctive for in the statute to separate the actual damages remedy and the statutory damages remedy. The District Court, however, declined to do this because it believed it was bound with an earlier decision analyzing an earlier statute that lacks the statutory damages remedy and it's an appealing decision in this Court. Because the District Court made this error, it found that actual damages were being individualized through jury, which . . . Can we start with standing? Of course, Your Honor. So, because of the weakness of the District Court's decision, we think Experian attacked standing, which they did not attack in the classroom. Let me ask you this. Yes. Let's take all evidence out of it. Here's my understanding of what we have here. What we have is a clear publication, so we don't have a publication issue, of a, what you call a renewed or a re-update, or re-aged I think is the way to put it, a re-aged date in the status date column of the report made to those that seek the reporting agency's information. In other words, it shows a more recent date for debt than otherwise would show. Is that fair? A more recent date for an adverse credit advantage collection status. Right. Okay. As a matter of logic, again, forget the evidence. As a matter of logic, if a third party saw that my date of debt or that my recent debt activity was very recent, as in this month, rather than three years ago that I haven't paid my bills and that that was still active, wouldn't that indicate something good about me rather than bad about me? In other words, there's no dispute in debt. There's a debt here, everyone agrees, and that debt is properly reported. So, all we're talking about here is debt that's more recent than it would otherwise be. And so, wouldn't that indicate something good about me that it's only very recently that I've gotten into any sort of trouble rather than having been in trouble for the past three years? That's not what the evidence shows, Your Honor. So, I prefaced what I said by, let's put the evidence aside. You and me just talk. Right. Wouldn't that indicate to just the regular person that I was more credit worthy because my debt is very recent rather than less credit worthy because my debt is about three years old? No, Your Honor. I'd say because a creditor is determining right now whether to extend credit, not determining three years ago. So, they want to know what is your financial status right now. I know, but everyone agrees this is all based on current debt. And if I hadn't paid for three years, doesn't that indicate I'm really in hock as opposed to I just missed a payment this particular month? No, it means that you entered collections at some point three years ago. Perhaps you're disputing it. Perhaps something happened three years ago. But right now, if you're up to date, you haven't had a more recent collections event, then it means that your financial condition may not be deteriorating right now. And that's why it's what the information is right now is important to creditors because they're making a decision right now. And that is what the evidence shows, Your Honor. Their own witnesses can see this point. It's the CAVE deposition. The problem you had three years ago resolved itself in a way that a potential creditor looks at and says, oh, that's well in the past. This guy, though, who's got recent problems, may not be a good risk because he's got current problems. You got it, Your Honor. That's completely right. But what I thought is, since this goes in collections, they're in collections. In other words, there's no dispute that there's a debt and that debt is owed. It's in collections. So all we're showing is whether the debt was three years ago that is still in collections or that the debt just got in collections, right? That's the difference here. Well, there is a dispute, I think, about what the information means and how it's interpreted. Experian wants to argue that this is immaterial. It's nothing more than like incorrect zip code, like Spokio hypothesized. But the evidence shows that's not true. The email from Experian's own employee, Ms. Herman at 134-11, says this makes it look like the collection just occurred and is brand new. So it doesn't make it look like it happened three years ago. And there's a reporting error that says this collection just happened. But doesn't that inert to the benefit of the debtor? It does not. Because as Ms. Cave testified, pages 64 to 65, their own expert testified, 134 to the 220106, and our expert testified, a more recent event, a more recent adverse event is more detrimental to someone's credit for a creditor who's making a decision than an older event. But wouldn't that be in the eye of the beholder, though? And so that there would be a fact issue. I'm going to the evidence now that there's really material, genuine issue of fact as to whether or not that's derogatory or not. Is it not correct? I know you have evidence that it's derogatory. It's more derogatory. But wouldn't that be a material issue of fact in this record? Perhaps. And that would mean that we should prevail. Because at this point, it means as to the overall picture, I'm not sure it's a per se thing. Doesn't it matter the context? Suppose it's the only one, for example. Suppose the creditor, excuse me, the debtor, that's the only thing they've got. Is this one thing that's very recent? That could be one fact scenario. Suppose it's a new thing on top of four other things. Doesn't context matter as to whether this is derogatory or not? It may matter to the degree of how derogatory it is to than an older debt. And for the purposes of standing, the question is, did we suffer an injury in fact? This court also in the Erickson case. We have to construe the record in your favor for that jurisdictional allegation. Correct, Your Honor. As this court said recently. But it might also affect the class certification though as to whether or not this type of violation is going to be fact specific or whether it's going to be per se for everybody all the same thing. That was really what my point was bleeding over into. But I was using the standing part because you want standing. But what gives you standing may well not help you on the class part. Understood, Your Honor. That's what I'm concerned about. Got it, Your Honor. We do think it's the standing analysis is the same for each class member because the standing question is simply, was it disseminated to third parties? The TransUnion case from the Supreme Court said all 1,800 people had standing because they had inaccurate reports sent to third parties to creditors. And that's what happened here. Each of the 2.1 million people who had credit reports sent to creditors who were asking for this information to make credit decisions. And as the nature of the statement, it's not just that it was inaccurate. It's the nature of the inaccuracy that meets the defamatory element that you need to be able to meet in between the defamation tort and the statutory cause of action, right? So I would just quarrel with, say, meet the defamatory element. I don't think you need to meet defamation, but a close relationship, I agree. And we think this does meet that for those pieces of evidence I articulated. Our expert report, the fact that their computers are programmed to pick up on the status state. So Experian argues, well, everybody in the industry ignores this information for a collections account. Well, we know that's not true because Experian's own analyzed the status state and create these triggers and smart attributes that they send out to creditors based on the status state. That's how they became aware of this problem in the first place, that it makes it look like a new collection event. Again, their testimony of Ms. Kay and Mr. Turner and our expert, Mr. Hendricks, all say that more recent events are more detrimental and their own email. How do we account for expert testimony in this? You argue expert testimony. They argue that we look at the industry. It seems to me that that's both besides the point of what the defamation tort requires, which is whether it tends to discredit the plaintiff's financial standing in the community in general. That's the tort. And so how do we weigh expert testimony in there? Because an expert's telling me that's the case, that means that the community understands it to be the case? I think it's evidence that goes to what that tendency is. But I think the evidence here, even if you put aside the expert testimony, the evidence here is more than sufficient because of their own witnesses, how they react to the information in real time, what their computer systems do and what they testify to. But as your Honor asked before, we're sort of at the summary judgment stage, so as the talk mail case just reaffirmed, at summary judgment the question is, is there a dispute of fact? At a minimum, we believe there is. Let me make sure before you finish up that I understand our posture, okay? Your argument is that the district court denied class certification based on an error of law, based on a misunderstanding that there would have to be proof of actual damages when in fact the law is established that under this statute, you can get statutory damages for the release of this information. That is an injury itself. And because of that, we ought to vacate the order denying class certification, send it back. That does not say that a class should be certified. That still has to be litigated. Only that the basis for denying it here was an error of law, and period, end of story. I see that I'm over, Chief Judge. You're fine, you're in. Okay, you have it spot on, correct, that at this point just we asked for to vacate the order and remand it in the correct statement. Thank you, Your Honor. I have a question on dissemination, though. You said 2.1 million we know received inquiries and the credit report is sent. Is that in that affidavit or something? Yes, Your Honor. It's at the Finneran Deposition 134-8 at pages 27 to 32. So that's a mortgage company inquired and got the credit report in connection with some loan or what have we. Correct, Your Honor. And the actual interrogatory... There's no question about dissemination. Correct. Okay. And what about the point they make? They said, well, we don't know it was ever used for anything, that credit was... Because Pedro, credit was denied. I mean, we've got cases where there's a showing of denial of credit. Do we have any showing of denial of credit to these folks here or a lower credit rating? I'm just trying to understand the record. I'm not saying... Because to me, it goes more to the class certification issue. Do we have any evidence one way or the other on that? We do not, Your Honor. Just to me, we don't have any evidence of denied credit or had a lower credit rating because of this particular item. Is that correct? Correct, Your Honor. And the interrogatory is at 134-16 at number five. That's where they laid out this number. And I would say the Loesch case is also one... I'm not getting into the law. I'm just trying to understand the record. We don't have evidence of any credit denial or a lower credit score. Correct, Your Honor. Okay. Thank you. Thank you. You've saved five minutes for rebuttal, Mr. Roth. May it please the Court, Yakov Roth for Experian. I'd also like to focus on standing if I could. And I think we all basically agree on the key legal principle, which is that a mere inaccuracy is not enough standing under the recent Supreme Court decisions. It has to be something that matters, materiality, which means it has to have the natural tendency to affect a decision. And that's what aligns it with the common law analog of defamation. So let me turn to the facts because I think that's what it really comes down to here, facts and the record. There's no evidence in the record that this status state field on these reports mattered to anyone, let alone harmed anyone. That seems not to be the relevant inquiry. I think the last question your opposing counsel answered confirms that from the question Judge Hull asked. It didn't... No one can show that it actually affected anything, but that's not really... That doesn't get us all the way there. I think that's right, Your Honor. I think the question is, again, materiality. It has to have the tendency to influence. If it has the tendency to influence, the court says, well, that's close enough. It's almost akin to defamation per se. But this doesn't even have the tendency to influence based on what we know in the record. And let me try to explain why that is. Can I ask you about the record? Yeah, please. So their expert testifies as part of his report, quote, an important consideration in evaluating how harmful the creditworthiness is a derogatory trade line is how recent it is, and he does recency. And that aligns with what your opposing counsel argued when I asked these questions. Their point is that the recency of this is a material factor in how people assess creditworthiness. And that is correct. However, for a collections account... It seems to be close to the ballgame, not a home run. No, I don't think it is, but it's subtle. So let me try to explain it. The recency of the debt matters, for sure. We're not disputing that. But the recency of a collections account is measured by the date when the collections account was opened. For other types of accounts, there is this second date called the status date that is listed underneath the open date. It matters when that type of account has a status that can change. So let me get this. You're getting into some complicated issues that the reason this bothers me is because this really hasn't been litigated. And if we were to vacate the order denying class certification and send it back and say, look, this was just premised on a misunderstanding of law, we're not saying the class should be certified, nor are we saying necessarily that they're standing, which can always be litigated. It might be that we don't want to address that because the record is so undeveloped on this point. Well, Your Honor, I don't think it's undeveloped. I think you do have to look at the record to figure it out. I think this court has in a number of cases. It sounds like it has to truly be explained to us. It's not just something I can look at and figure out myself. Well, let me try to explain it and then let me try to point to the parts of the record that actually establish it, because yes, it's a large binder. In reality, there are about five pages in it that matter. Okay. So let me try to walk through it. And then, you know, if the court determines it can't make this conclusion, then I understand that. But generally, we try to address standing first and even on appeal when it's based for appeal, as Your Honor knows. Absolutely. Okay. So I just want to explain what the status state is. And critically, this is not disputed. Like if you look at the two expert reports next to each other, they don't say we're wrong about what this means. There's nothing like that in their evidence. The status date signifies when the most recent status of the account has been reported, which matters only when the status can change. So for example, if I have a credit card and I'm delinquent on my credit card, the potential lender is going to want to know how long have I had the credit card and when did I become delinquent? The second date is the status date and it is material in that context. For a collections account, the record is clear and undisputed. The status never changes. It is always in collections. And so the only date that matters and the only date that is even factored into the credit scoring models is the open date, the date when it was actually sent to the debtor. Right next to each other on the credit report? Right next to each other. All right. And it says just open date? Yes. And for example, this name plaintiff, what does the open date say here? So you would see that all you're seeing is open date when the account was open, not when it became delinquent? Well, when the collections account was open. So a collections account is opened when it is sent to the debt collector. And once it's sent to the debt collector, it's in collections until it's closed and drops off the report. So the open date is when the And the credit scoring declarations, the two declarations from the companies that do the modeling, they said, here are the things we care about in the context of collections account. How much is it? What type of debt is it, medical or non-medical? And when was it opened? Those are the only factors that go into the algorithm. So the point is not, oh, they can't show that this but it's not the test. The test is how someone seeing this information would understand the financial condition of the plaintiff in the community. That's the test. I'm not sure there's a lot of, I'm not sure there's a distinction there, Your Honor, respectfully, because nobody else is looking at these documents. Let's put it this way. Whether or not my credit report goes down, if somebody knew that I didn't pay my debt more recently than another time, the question is, would someone see my financial credit as less credit worthy in the community? That seems to me to be the question. Let me respond to that in two ways. One, the status state doesn't say that. Is my understanding of the law wrong? I'm not sure it's correct because I'm not sure how. I'm reading from the restatement. How is it wrong? So I think that if you had a situation, for example, where you had a field on a credit report and the evidence was undisputed that it never, nobody reads it. I don't know that that would be material for purposes. If we know it's disseminated, if my neighbor saw that I didn't pay my credit card bill this month as opposed to three years ago, would that affect my credit? Would that affect my standing in the community? Yes. Yes. I'm not going to argue with you. Then I don't understand what we're talking about. Well, what we're talking about is whether the from page 13 of the report. I'm going to read two paragraphs to you. An inaccurate date of status, which is what we're talking about, or account payment history is not merely an administrative error. Experian itself directs third parties to the date of status or payment level date to determine when the account reached its current status. Further, because of the suppressed account history, another Experian reporting product known as Triggers picks up the ARS accounts as newly reported debt every month and wrongly alerts other creditors of a new collection account. Because of the inaccurate date of status, yet another Experian product known as Smart Attributes incorrectly describes the financial condition of plaintiffs and consumers to other creditors. The inaccurate date of status and account payment history has the effect of making the debt appear more recent than it is, i.e. it looks like plaintiffs and class members financial condition is deteriorating now rather than something in the past. Experian's own witnesses admit that from the perspective of a creditor, newer debt is worse than older debt. So, there's a few who take that as true. Well, yes, and that's fine. But a lot of what that is about is, and I think this is telling, is completely distinct products that have nothing to do with this case. So, they are talking about these Triggers and other products. The reason they are talking about those products, which do, are set off in a way by these, by this date, okay? That's why they're talking about it. They're talking about that because they can't show that the credit reports, which are what binds together the class, cause any harm or even potentially cause any harm. It's, they're shifting to another product. But harm, you're substituting, this is the problem I'm having. I'm telling you I'm having it. You're substituting harm for when there's no requirement of harm. There's no requirement in the restatement for actual harm resulting from a defamatory statement. The question is the statement is defamatory and the test, as I understand it, under the restatement is whether it tends to, whether it tends to affect the credit worthiness or the financial condition of the plaintiff as if it was known to the community. Right. But what they're trying to do with these other products is say, forget about the credit report and whether that would make you look bad to the members of the community. Experian puts that information, uses it in another algorithm to sell another product to other people about other people. And that would matter, which may be true, but that hasn't, that's not their theory of harm for themselves or the class. So the fact that it's using another product that may be derogatory for them when that product is sold, I don't see how it helps them here. And I would just point your honor to their own rebuttal report of their expert, which is tab 135 exhibit two, where he says plaintiffs do not rely on harm to name plaintiffs or class members by triggers and smart attributes. They're not relying on that. They're relying on the credit report alone. And our position is the credit report alone does not cause anyone to look worse in the community because it correctly identifies all the things that matter. Let me ask you about that because we're getting lower in the time, but the statutory issue here. So one, one, one established exception to our prior panel precedent rule is if there is intervening case intervening action by Congress here, there clearly is. And so then the question is, is Kalin still good law or not? Well, in my mind, I'm not sure that Kalin, we would apply Kalin given that the chain. So the question is since then, is there a binding precedent? And I think everyone agrees that there's not, although we've made some indications of that. How do you square that with Levine? Cause Levine seems to suggest that there need not be actual harm under 1681 N. Your Honor, I think it's true that both the cases we cite and I think the cases they cite, none of them were really speaking to this precise issue. I agree. There is language kind of going both ways. Levine decides the issue. I agree with you that there's not, in other words, this issue was not squarely presented to a court and they said this issue was decided. Right. But Levine did decide whether actual damages were needed for 1681 N and it suggests no. Am I reading that wrong? Look, it came up in a different context and I think that's not how we read the case, but I just want to tell me how I have it wrong. Well, stepping back, I just think the statutory question ultimately no longer matters in this case or any case because we now have a requirement in article three of injury in fact. And as a result of that, to me, I don't really see why it matters whether the statute has an additional requirement. But for the defamation tort, and this is not true of every tort, but for the defamation tort, there need not be actual harm. I think everyone agrees to that. Well, no, it's harm. It's an intangible harm that we treat by satisfied. But that doesn't mean it's an actual harm under a statute. There's daylight there. So I think it's very hard. Honestly, it's very hard for me to see the daylight. And I was having a hard time identifying a case that would satisfy article three standing in our view and not satisfy the statutory harm standard. Because if you have a reputational injury, if we're deeming you to have a reputational injury because this makes you look bad, it seems to me that would be actual damage. I mean, if my neighbor is told and only my neighbor is told that I am a felon and I am not a felon and I sue as a result of that, but the only person who heard it was my neighbor, whether I was damaged in any way, it's hard to understand how I would be financially damaged in any way from that, even though it clearly is defamatory. And yet I could be under under a statutory regime, get statutory damages. But your honor, I think you would have damage there. It might not be financial. It would be reputational. That's the whole point of the defamation per se. It's not that we don't care. It's that we're treating it as satisfied because it hurts your reputation. And I think that's the same test that that has to apply under. How is a reputational intangible harm actual damages, which is what the statute requires? How is it? Well, it's it's a type of damage that is hard to quantify, which is why we have statutory damages. So I don't. But it's not actual. It's not. Nothing came out of my wallet. That's fine, your honor. I just think. Ultimately, I think that the delta there is going to be really narrow. Um, so I want to go back to something you said a moment ago, which is you said you didn't think the statutory question really mattered. Let's say that at least for me, it matters and that we get our law right about it. And we say that the district court heard and misunderstood that law. All we would be doing is vacating the order, denying class certification. And it might well still be that without us addressing standing, standing, we could even say standing is among the issues that that may still need to be litigated. And there are a lot of other issues to be litigated in determining whether a class action should be certified. We just leave those for another day. Your honor, here's what I would say about that. The reasoning of the district court in denying class certification was that the inquiry into harm is going to necessarily be individualized and the district court located the requirement of harms in the statute, which is what plaintiffs say was incorrect. We think the requirement of injury comes from article three, but that otherwise the analysis is completely correct. So you do have an individualized inquiry that is going to be required into the effect. As I understand it, I'm not sure we want to do that in the first instance, make all those leaps. But what you're saying, okay, district court got the statutory text wrong. You can sue for statutory damages without showing actual harm. So assuming that's correct, your position then is, but you're not going to have article three standing to do that without some actual harm. Is that the analytical framework you're trying to walk us down? Yes. Okay. I know you don't concede the statutory text does that, but I think the better argument is the statutory text is clear and it's, or, and this, it reeks of statutory damages, particularly when you look at other sections of the same law. So, okay. Assuming for sake of So then you've got still show actual harm for article three or whatever, concrete injury, whatever you want to call it. And you're saying, well, if you look at the analysis he did on the actual harm for the statute, it's the same analysis, but that's a lot to just kind of walk through is what your chief is saying. Why wouldn't we send that back to the district court? It may well be you can convince the district court. One, you don't have standing, or even if you do have standing, it's going to affect the class certification. Why would that not be the proper way to do that? It could be your honor. I just think it's been, it has been briefed and the record is fully developed and they haven't said they need to put more evidence. But it's been briefed in terms of looking at a statute as opposed to looking at article three. We briefed, we briefed it. Well, I know, but it's been briefed, but it's not been looked at. Ultimately, I think the only way that you can sustain a class definition this broad is if you could say that the injury here is of the nature that it's categorical, that it's going to apply across 2 million plus people. In other words, you think there'll be a predominance problem. There is still a predominance problem. The one that district court correctly identified, it just may be a predominance problem. That's not to judge the predominance inquiry. Finally, but the district court's analysis of it was based, was premised on an error of law. It may well still be that there's a predominance problem, just for a different reason. Yeah, you had your best sentence. There may, there's still a predominance problem, but the location of it is in a different problem. That's your best line. I think you've gone, we've been answering our questions. Mr. Roth, we appreciate it very much. We're going to hear a few minutes from Mr. Wanshaw. Thank you, your honor. I just have a few points to follow up. As to whether, you know, if the court provides guidance to the district court on remand as to whether there might be a predominance issue, the reason we don't think there is one is because. I didn't say guidance. I'm not, I'm not a big fan of advisory opinions, but it's one thing to do guidance. It's another thing to say, this is all we're deciding. Of course, your honor. And I think that's the appropriate course to take. And just, just to say what we don't think there is a predominance issue is if the Loesch decision specifically says you don't need to have a lower credit rating as a result or an adverse decision as a result of the defamatory statement being disseminated, all you need is the publication. And we can, we show that that is what happened for all class members that are on. In other words, if it's defamatory as to these two plaintiffs, it's going to be the same way defamatory for all members of the class. That's right. In other words, it all rises and falls together. Correct, your honor. And just one last point on this triggers versus smart attributes issue. The reason we point to those is because it shows how the foremost experts in the field use this data. So Experian wants to say people disregard status dates for collections accounts. They don't, they won't look to it. They'll only look to the date that it was opened, but we know that's not true because Experian actually sets up its products to look at the status date and when the status date changes to then send out an alert. So we're not saying that these alerts were sent out for these plaintiffs because we already have the reports that were sent out to them. We're saying Experian expert in the field, they look at this data and they say that's a new collection account unless the court has any other questions. We'll rest. Thank you very much, Dr. Roth. Appreciate that extra time being given back. We'll go to the last case Highland Consulting Group versus